FILED ___ LODGED ___
___ RECEIVED

JUL 21 2016

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ___ DEPUTY

Magistrate Judge J. Richard Creatura

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

LEVI G. BLACK,

    Defendant.

CASE NO. MJ16-5144

COMPLAINT for VIOLATION

Title 18, United States Code, Sections 113(a)(6) and 1153

BEFORE the Honorable J. Richard Creatura, United States Magistrate Judge, United States Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1

### (Assault Resulting in Serious Bodily Injury)

On or about April 15, 2016, at La Push, on the Quileute Indian Reservation, in Indian Country, as defined by Title 18, United States Code, Section 1151, and within the Western District of Washington, LEVI G. BLACK, an enrolled member of the Quileute Indian Tribe, did intentionally assault another person, JOHN DOE, resulting in serious bodily injury.

All in violation of Title 18, United States Code, Sections 113(a)(6) and 1153.

The Complainant states in further support of this Complaint:

## Complainant's Background

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed for fourteen years. I am currently assigned to the Poulsbo Resident Agency of the Seattle Division. The FBI is responsible for enforcing the federal criminal statutes of the United States. While employed as a FBI Agent, I have led investigations and/or participated in investigations of a wide array of federal criminal violations, including bank robbery, fugitives, drug crimes, organized crime, crimes against children, and crimes occurring in Indian Country, including violent crimes. The latter is the subject of this affidavit.

2. The information contained in this affidavit is based upon my own investigation, police reports, the investigations conducted by others, and the details related to me by others familiar with this matter. Because this affidavit is made for the limited purpose of establishing probable cause, I have not listed each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that LEVI G. BLACK committed the crime of Assault Resulting in Serious Bodily Injury in violation of Title 18, United States Code, Sections 113(a)(6) and 1153.

## Summary of Probable Cause

3. On April 15, 2016, at approximately 8:00 p.m., the La Push Tribal Police Department received information from a concerned person about a fight that occurred earlier in the evening, involving John Doe ("Doe") and LEVI G. BLACK ("BLACK"). The report included information that BLACK's girlfriend, S.J., and Doe's common law wife, A.B., were both knocked down during the fight.

4. La Push Police searched for the above parties in order to check on their welfare. At approximately 8:06 p.m., all four individuals were located together inside the home of BLACK in La Push. As they passed a window on the way to the front door, La Push Police saw empty shot glasses and beer bottles sitting on the table. Upon

questioning, BLACK and A.B. denied a fight took place and told La Push Police it was just a verbal argument. La Push Police observed BLACK and Doe and saw no signs of a physical altercation, including lack of obvious physical injury such as blood, bruising or abrasions, and no clothing that was disheveled or stained. While talking to BLACK and A.B., La Push Police noted a strong odor of intoxicating beverages. While talking to Doe, La Push Police noted his words were very slurred and it was difficult to make out what he said.

5. Unable to establish a victim or suspect, La Push Police departed the residence after advising the four individuals not to drive given it was apparent they were drinking.

6. At approximately 9:15 p.m. that evening, two witnesses arrived at the police station and provided statements that they had seen BLACK, S.J., A.B. and Doe arguing earlier. The first witness, Witness 1, told police he was on the back porch of his neighbor's house, which is located within sight of BLACK's house, when he saw BLACK punch a female (possibly A.B.), push S.J. hard with two hands causing her to stagger approximately ten feet back, then grab Doe with one hand and punch him several times with the other hand.[1] The second witness, Witness 2, said he was located on the play gym behind BLACK's residence and all he saw was BLACK push S.J., and that she "flew back" when BLACK pushed her.

7. Medical records from Forks Community Hospital revealed that Doe was brought to the Hospital by family members at approximately 4:50 p.m. on April 16, 2016, and that he was unconscious on arrival.

8. The Forks Community Hospital records further revealed that the doctor's initial working diagnosis was that Doe was suffering from a condition related to his diabetes, however, a CT scan of Doe's head was completed and showed a subdural hematoma with intraventricular hemorrhage and subfalcine herniation and probable uncal

---

[1] For ease of reference, all witnesses mentioned herein will be referred to as male, regardless of their actual gender.

herniation. Upon diagnosis of the subdural hematoma, the attending physician prepared to transfer Doe to Harborview Medical Center.

9. Harborview Medical Center records for Doe show that an initial evaluation and exam by neurosurgery revealed a strong likelihood that he sustained a non-survivable brain injury. Records further showed a repeat CT scan of the head was concerning for uncal herniation, and neurosurgery did not proceed with surgical intervention. At approximately 3:25 a.m. on April 17, 2016, Doe passed away. The medical report indicated the underlying disease or injury that caused the death was subdural hematoma with brainstem herniation.

10. On April 19, 2016, La Push Police interviewed Witness 3, who is a neighbor of BLACK. Witness 3 reported he was outside of his house with his friends on the night of April 15, 2016, when he witnessed BLACK pushing and punching people. Witness 3 reported he did not have his contacts or glasses on at the time, but he knew BLACK and could tell who BLACK was by his voice.

11. On April 19, 2016, La Push Police interviewed Witness 4, who is a neighbor of BLACK. Witness 4 reported he was outside of his house with his friends at approximately 7:00 p.m. on April 15, 2016, when he saw BLACK arguing with three other people. Witness 4 heard BLACK yell "F-you" three times and then saw him swing at an unknown male (UM) who was wearing a hat. According to Witness 4, BLACK swung at the UM and hit him in the face/cheek area with his right hand, and the UM fell down. Witness 4 then saw BLACK jump on the UM and start swinging violently, hitting him repeatedly with one hand, holding him down with the other. Witness 4 said that after four or five hits, an unknown female tried to stop the fight and BLACK threw her. Two females finally pushed BLACK off of the UM and then helped the UM, who got up and straightened his clothes. When they started arguing again, Witness 4 went inside.

12. On April 20, 2016, A.B. and S.J. were interviewed separately regarding the aforementioned fight between BLACK and Doe on April 15, 2016. Both gave similar accounts of the fight, noting that it started inside BLACK's house as a verbal argument

COMPLAINT/*LEVI G. BLACK* - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  about Doe's son, and when it moved outside, it escalated to BLACK and Doe pushing
2  and shoving one another. Both advised they were tossed or pushed hard by their
3  respective partners when they tried to intervene, and both denied that any punches were
4  thrown by BLACK or Doe. Both A.B. and S.J. said they did not see Doe fall at anytime
5  during the evening.  When asked why others in the community reported seeing a
6  physical fight between BLACK and Doe, both stated they did not know.
7          13.    During her interview, A.B. reported that after the police left BLACK's
8  residence on April 15, 2016, she drove straight home and arrived at approximately 8:45
9  p.m. A.B. further reported that Doe "passed out" on the way, and when they arrived she
10 could not wake him and assumed he was passed out from a combination of drinking and
11 diabetes. A.B. reported that at approximately 9:00 p.m. she exchanged text messages
12 with S.J., to let her know she got home okay, and that Doe was passed out in the car.
13 According to A.B., she checked on Doe throughout the night, but he never woke up and
14 only moaned a few times. A.B. reported that at approximately 2:00 or 3:00 a.m. she
15 checked on Doe and noticed he had vomited down his left side. A.B. reported that
16 sometime later Doe's breathing had changed and she contacted S.J., who was a former
17 Emergency Medical Technician. A.B. stated S.J. came over and checked on Doe and
18 they changed the angle of the seat, which helped his breathing. After continuing to check
19 on Doe throughout the day, A.B. reported she made the decision to take Doe to the
20 hospital, and picked up BLACK and S.J. to go with her.
21         14.    Additionally, A.B. reported that Doe had type II diabetes and had been a
22 diabetic for twelve years. She also reported that Doe had stints in his heart and took
23 medication and insulin on a daily basis.
24         15.    On April 21, 2016, La Push Police interviewed Witness 5, who is a
25 neighbor of BLACK. Witness 5 reported he can see BLACK's house from inside his
26 house and that he witnessed a fight between Doe and BLACK in front of BLACK's
27 house on the evening of April 15, 2016. According to Witness 5, he heard some yelling
28 and then saw BLACK pointing towards Doe. Doe and BLACK had words with each

other and then punches were thrown. Witness 5 did not know who made contact first, but he saw BLACK going towards Doe and throwing a punch. After BLACK and Doe were wrestling around with each other, Witness 5 saw BLACK throw Doe on the ground, and could see BLACK throwing punches at Doe while he was on the ground and trying to get up. Witness 5 noted that BLACK was wearing a big, white t-shirt and that A.B. and S.J. were outside with BLACK and Doe at the time of the assault, which lasted approximately two to three minutes. After BLACK got up, Doe finally got up too and went directly for his car and stood there with the door open. Witness 5 reported that while Doe was standing at the door, A.B. was talking to BLACK, pointing her finger at him as if she were mad at him. Approximately a minute or two after BLACK and Doe stood up, they went back into the house.

16. On April 24, 2016, BLACK was interviewed by agents of the FBI. During that interview, BLACK stated that the argument with Doe started inside his residence as a discussion about Doe's son and basketball. It escalated to the level of yelling and moved outside after Doe and A.B. exited the house and got into their SUV. During this time, Doe called BLACK a "chicken shit" for staying in his house, which caused BLACK to exit the house and confront Doe, who exited his SUV. BLACK stated he and Doe pushed and shoved one another, which turned into a "staring" thing, and ended with a hug and them going back into his residence together. BLACK denied that either he or Doe struck one another, but acknowledged the women (S.J. and A.B.) were trying to deescalate the situation and were pushed to the side. BLACK did not recall hearing that Doe had taken a bad fall during the evening. When confronted about the statements made by witnesses who said they saw two men fighting on the lawn, with one man on top of the other, BLACK said he did not know why they would say that and denied that those things took place.

17. On May 3, 2016, Witness 6, a friend and neighbor of BLACK, was interviewed by the FBI about his knowledge of an argument or fight between Doe and BLACK on the night of April 15, 2016. Witness 6 did not witness the fight, but spoke

1 with BLACK after the police left BLACK's residence. Witness 6 said that BLACK was
2 drunk, and still angry, and told Witness 6 that he and Doe had a fight because Doe said
3 his son was a better father than BLACK. BLACK told Witness 6 that he hit Doe a couple
4 of times and said Doe had no business coming in to his house and talking to him that
5 way.
6     18.    On May 3, 2016, Witness 7 was interviewed by the FBI about what he
7 witnessed on the night of April 15, 2016. Witness 7 reported he was on the back porch at
8 Witness 4's house with his friends when they heard screaming coming from a couple of
9 houses down and could see two unknown males (UM #1 and UM #2) and two unknown
10 females (UF) from Witness 4's backyard. One of the UM's was wearing a white shirt,
11 and Witness 7 saw him knock the other UM to the ground with a punch. Witness 7 then
12 saw the same UM push a UF down to the ground. Witness 7 heard more screaming and
13 then the group shifted towards the garage out Witness 7's view. Witness 7 said the UM
14 in the white shirt was the aggressor and that he did not see anyone else take a swing or
15 punch. Witness 7 did not know any of the people involved in the fight but was told by
16 his friends that the UM in the white shirt was Witness #1's neighbor.
17     19.    During interviews with A.B., S.J., and BLACK, all reported being together,
18 with Doe, at the Thriftway Store, located at 950 South Forks Avenue, Forks, WA, in the
19 late afternoon of April 15, 2016. I have reviewed surveillance video from the Thriftway
20 Store on that day and noted that at approximately 4:49 p.m., BLACK was observed
21 wearing a white t-shirt, dark colored pants and white sneakers with red trim. At
22 approximately the same time in other video footage at the store, Doe was observed
23 wearing a blue t-shirt bearing a Pepsi Cola emblem and a dark jacket with camouflage
24 sleeves.
25     20.    On June 3, 2016, BLACK was interviewed for the second time by agents of
26 the FBI. During that interview, BLACK was confronted about the fight that took place
27 between he and Doe at his residence on April 15, 2016, and was advised that there were
28 several witnesses who claimed to have seen BLACK punch Doe during the fight.

BLACK denied that he struck Doe, and said they only pushed and shoved one another. BLACK also denied that the argument had anything to do with Doe telling BLACK his son was a better father than BLACK, and instead said the argument was about basketball, and Doe claiming his son was a better player than BLACK's brother.

21. During a subsequent interview on June 3, BLACK acknowledged that he and Doe got into a verbal argument that escalated with Doe saying some hurtful things, specifically that Doe's son was a better father than BLACK was to his son. BLACK also reported that after the argument moved outside of his house, he hit Doe with a closed fist on the left side of Doe's head. BLACK reported he only hit Doe one time. After he hit him, Doe slipped and started to fall backwards, but caught himself, and BLACK reported he reached down and tried to help Doe up. Afterwards, BLACK reported they stared at each other, then apologized to each other, then went back inside the house. BLACK provided a voluntary written statement following the interview. In addition to details about the argument and fight, BLACK apologized and stated he wanted to take responsibility for his actions.

22. I have reviewed the autopsy report for John Doe which opines that the cause of death is blunt force injuries of the head. It further states that the injuries are consistent with an assault and that the manner of death is homicide.

23. I have confirmed that LEVI G. BLACK is an enrolled member of the Quileute Indian Tribe, a federally recognized Indian tribe.

24. I have also confirmed that the residence where the assault took place is located on tribal trust land within the exterior boundaries of the Quileute Indian Reservation.

## Conclusion

25. Based on the above facts, I respectfully submit that there is probable cause to believe that LEVI G. BLACK has committed the crime of Assault Resulting in Serious Bodily Injury in violation of Title 18, United States Code, Sections 113(a)(6) and 1153.

_____
COLLEEN B. SANDERS, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant LEVI G. BLACK committed the offense set forth in the Complaint.

Dated this 21st day of July, 2016.

_____
Hon. J. Richard Creatura
United States Magistrate Judge